**Robert K. MURAKAMI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–55C.

United States Court of Federal Claims.

May 31, 2000.

ORDER

ALLEGRA, Judge.

This case is before the court on plaintiff's motion to supplement the administrative record created in agency proceedings before the Office of Redress Administration (ORA) and the Civil Rights Division of the Department of Justice. Plaintiff alternatively requests that this court take judicial notice of various aspects of the documents he seeks to add to the administrative record. Following oral argument and careful consideration of the parties' filings regarding this matter, and for the reasons described below, the court DENIES plaintiff's Request to Supplement the Administrative Record and Request for Judicial Notice.

## I. Facts

The following recitation of facts borrows from this court's May 4, 2000, order denying defendant's motion to dismiss. Plaintiff is an American citizen of Japanese ancestry, who was born in Chicago, Illinois on August 23, 1945, approximately one year after his parents had left the Manzanar internment camp near Bishop, California. Plaintiff's parents had been forced to move from their home near Los Angeles to Manzanar in 1942.[1] On October 29, 1996, plaintiff filed a claim for redress under the Civil Liberties Act of 1988 (the Act), 50 U.S.C. app. § 1989b, *et seq.* (1988 & Supp. V 1993), alleging that the U.S. Government's exclusion of his parents from Los Angeles effectively deprived his parents of the opportunity to rear him in their home town. *See Ishida v. United States,* 59 F.3d 1224 (Fed.Cir.1995) (recognizing the potential viability of such a claim under the Act).

On June 23, 1997, the ORA denied plaintiff's claim for compensation, holding that he was ineligible under the statute for reparation payments. According to the ORA, plaintiff was born after the issuance of Proclamation No. 21, which, in its view, effectively lifted any travel restrictions upon citizens of Japanese ancestry as of January 20, 1945, approximately seven months before plaintiff was born. The Civil Rights Division of the

Shuji John Howard Ota, Minami, Lew & Tamaki LLP, San Francisco, CA, for plaintiff.

Steven Jay Abelson, U.S. Department of Justice, Civil Div., Washington, DC, for defendant.

---

1. Plaintiff's parents were among those "enrolled on the records of the United States Government ... as being in a prohibited military zone." 50 U.S.C.App. § 1989b–7(2)(B)(ii).

Department of Justice affirmed the ORA decision on March 25, 1998. On February 5, 1999, plaintiff filed a complaint in this court pursuant to 50 U.S.C. app. § 1989b–4(h)(1), appealing the decision of the Civil Rights Division affirming the ORA's denial of his requested restitution. On October 19, 1999, plaintiff filed his Request to Supplement the Administrative Record and Request for Judicial Notice. Along with this request, plaintiff submitted his proposed Supplementation of the Administrative Record. Essentially, plaintiff seeks to supplement the Administrative Record with five categories of information:

(i) information regarding plaintiff's parents allegedly obtained from the National Archives;

(ii) alleged correspondence between plaintiff's father and U.S. government officials during the 1942–1946 period;

(iii) documents concerning wartime internment of Japanese Americans allegedly obtained from the National Archives by the late historian and author, Michi Weglyn;

(iv) newspaper articles from the New York Times concerning the wartime internment of Japanese Americans, particularly during the period that these individuals were allowed to return to the West Coast; and

(v) a declaration from plaintiff's father concerning his exclusion from the West Coast and his attempts to return to the West Coast in 1945.[2]

All but two of the documents contained in plaintiff's submission constitute evidence that was not presented at the agency level. Defendant filed its opposition to the plaintiff's request on December 22, 1999. On May 10, 2000, oral argument was held on this issue.

## II. Discussion

### A. Judicial Review under the Civil Liberties Act

In its 1992 amendments to the Act, Congress granted this court exclusive jurisdiction to conduct judicial review of the denial of any restitution claims filed with the ORA after September 27, 1992. *See* 50 U.S.C.App. § 1989b–4(h)(1)(Supp. V 1993). The relevant provision of the Act provides:

A claimant may seek judicial review of a denial of compensation under this section solely in the United States Court of Federal Claims, which shall review the denial *upon the administrative record* and shall hold unlawful and set aside the denial if it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

*Id.* (emphasis added). This court has previously held that this provision applies to the instant case, both granting jurisdiction and waiving sovereign immunity as to plaintiff's complaint. *See Murakami v. United States*, 46 Fed.Cl. 653, 654–57 (2000).

In cases involving judicial review based "upon the administrative record," this court, absent exceptional circumstances, confines itself to the record created in the proceedings below. As stated in *Aero Corp., S.A. v. United States*, 38 Fed.Cl. 408 (1997):

[T]he court's review generally should be based upon an examination of the "whole record" before the agency, *i.e.*, the material that was developed and considered by the agency in making its decision.... The focal point for judicial review therefore "should be the administrative record already in existence, not some new record made initially by the reviewing court."

*Id.* at 410–11 (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106, (1973)). *See also Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (where a record in an arbitrary and capricious review is incomplete, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."); *FCC v.*

---

**2.** Plaintiff's submission also includes a pre-litigation letter from his attorney to the U.S. Department of Justice concerning the availability of funding to pay any judgment rendered in this case. Plaintiff admits that this letter is not relevant to any matters currently pending before the court.

*ITT World Communications, Inc.*, 466 U.S. 463, 469, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984). This principle "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny," *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C.Cir.1989), and is all the more absolute where, as here, a formal record was developed by the agency in reaching its decision.

 Nonetheless, limited exceptions exist under which an administrative record may be supplemented. Thus, some decisions hold that a court may consider "extra-record" evidence:

(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for failure to take action ... and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Cubic Applications, Inc. v. United States*, 37 Fed.Cl. 339, 342 (1997) (quoting *Esch*, 876 F.2d at 991). *See also Marine Hydraulics Int'l, Inc. v. United States*, 43 Fed.Cl. 664, 670 (1999).[3] The *Esch* exceptions to the general rule against extra-record evidence are based upon necessity, rather than convenience, and should be triggered only where the omission of extra-record evidence precludes effective judicial review. As some of the cases upon which *Esch* relied emphasize, the construction of these exceptions "must be extremely limited," *American Mining Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 718 (1986), lest the admission of evidence not considered by the agency below and its consideration by the court convert the "arbitrary and capricious" standard into effectively *de novo* review. *See, e.g., Lizut v. Dept. of the Army*, 717 F.2d 1391, 1396 (Fed.Cir.1983); *Long v. United States*, 12 Cl.Ct. 174, 177 & n. 2 (1987).[4]

---

**3.** The *Esch* decision is arguably distinguishable from the instant case because it, and many of the cases upon which it relied, involved the procedural validity of the agency action, rather than the merits of the substantive decision reached. This point was explicitly noted by the D.C. Circuit as a prelude to its oft-cited litany of extra-record exceptions. *See Esch*, 876 F.2d at 991.

**4.** Some of the *Esch* exceptions give rise to more concerns in this regard than others. For example, allowing extra-record evidence to indicate that an agency failed to consider a factor it was obliged to consider might well be a frequent necessity. Similarly, allowing the record to be supplemented by evidence that the agency considered but did not include in the record might be viewed as not supplementation at all, but merely requiring that the administrative record be complete. Others of the *Esch* exceptions— allowing extra-record evidence where, for example, an agency action is not adequately explained or preliminary relief is involved—are so broadly-worded as to risk being incompatible with the limited nature of arbitrary and capricious review, particularly if construed to allow the introduction of new evidence or theories not presented to the deciding agency. As described by the Supreme Court, the arbitrary and capricious standard recognizes the possibility that there exists a zone of acceptable results in a particular case and requires only that the final decision reached by the agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). *See also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). It is difficult to see how a court could provide much more than lip service to this limited standard of review were it to consider significant evidence or theories not presented to the agency. *See* Steven Stark & Sarah Wald, *Setting No Records: The Failed Attempt to Limit the Record in Review of Administrative Action*, 36 Admin. L.Rev. 333, 335–36 (1984) ("[A]n examination of the concept of review on the record in the courts surprisingly reveals that the doctrine no longer exists in any coherent form, although judges and analysts pretend that it is still viable.... [C]ourts have developed so many unwritten exceptions to the doctrine of record review, that industrious advocates now can introduce any evidence they choose in cases reviewing informal administrative action."); George G. Young, *Judicial Review of Informal Agency Action on the Fiftieth Anniversary of the APA: The Alleged Demise and Actual Status of Overton Park's Requirement of Judicial Review 'On the Record,'* 10 Admin. L.J. Am. U. 179, 228 (1996) (noting that some of the *Esch* exceptions essentially render the review on the record rule "meaningless").

Plaintiff argues that his request for supplementation is appropriate for three of the reasons suggested in the *Esch* decision: (i) the case is so complex that the court needs more evidence to be able to understand the issues clearly; (ii) evidence arising after the agency action shows that the decision was incorrect; and (iii) the agency failed to consider factors which are relevant to its decision. The court will focus on these arguments *seriatim*.

### 1. Complexity

 Plaintiff argues that his case for redress is both historically and factually complex. However, the complexity exception under *Esch* is generally confined to cases involving scientific, economic or otherwise obscure or specialized topics of the sort that might ordinarily require explanation by expert witness, *see, e.g., Public Power Council v. Johnson,* 674 F.2d 791, 794 (9th Cir.1982); *American Canoe Assoc., Inc. v. EPA,* 46 F.Supp.2d 473, 477 (E.D.Va.1999).[5] Here, there is no such complexity—rather, the court is faced with a situation involving relatively straightforward factual and historical information. As such, this is not a situation where "the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues." *American Mining Congress,* 772 F.2d at 626. The "complex matter" exception thus does not apply in the instant case.

### 2. Evidence arising after the agency decision

 Although oft-repeated as part of the litany of exceptions recognized by *Esch,* the "new evidence" exception has infrequently been applied and is of dubious extraction. See discussion *supra* at footnote 3.[6] Nonetheless, by its terms, this exception clearly does not apply if the evidence in question was accessible to the plaintiff prior to the agency action. As stated by this court:

> In reviewing an administrative action, the court generally bases its determination solely on review of the administrative record and will not consider evidence produced for the first time in a court proceeding when such evidence was available during administrative proceedings.

*Benton v. United States,* 6 Cl.Ct. 781, 786 (1984). *See also Hedman v. United States,* 21 Cl.Ct. 385, 392–93 n. 10 (1990) ("The general rule on the submission of new evidence is that it is permissible only if it was unavailable below or if plaintiff makes a strong showing of bad faith or improper behavior that creates serious doubts about the fundamental integrity of the administrative action.") (citation omitted).[7] These cases make clear that, where judicial review is based on an administrative record, this court generally will reject extra-record evidence that was available, but not presented to the agency below.

 This principle precludes supplementing the record here. As noted above, virtual-

---

5. *See also Love v. Thomas,* 858 F.2d 1347, 1356–57 (9th Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 403 (1989) (approving augmentation to allow information on pesticides); *Arkla Exploration Co. v. Texas Oil & Gas Corp.,* 734 F.2d 347, 357 (8th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985) (allowing explanation of petroleum geology); *Conservation Law Found. of New England v. Clark,* 590 F.Supp. 1467, 1474–75 & n. 5 (D.Mass.1984), *aff'd sub nom. Conservation Law Found. of New England v. Secretary of Interior,* 864 F.2d 954 (1st Cir.1989) (allowing augmentation to explain impact of environmental rules on Cape Cod seashore).

6. The few published decisions that apply this exception appear to involve situations in which evidence was produced to show the projections or predictions upon which an agency action was

based either proved accurate or inaccurate. *See Ass'n of Pac. Fisheries v. EPA,* 615 F.2d 794, 812 (9th Cir.1980) ("If the [post-decisional] studies showed that the Agency proceeded upon assumptions that were entirely fictional or utterly without scientific support, then post-decisional data might be utilized by the party challenging the regulation."); *Amoco Oil v. EPA,* 501 F.2d 722, 735 n. 31 (D.C.Cir.1974) (noting that new data supplied by EPA helped the court to conclude that EPA's original predictions were rational); *Am. Petroleum Inst. v. EPA,* 540 F.2d 1023, 1034 (10th Cir.1976), *cert. denied,* 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977) (same).

7. For additional cases to this effect, see *Hayes v. Dept. of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir. 1984); *Lizut,* 717 F.2d at 1396, and *Brousseau v. United States,* 226 Ct.Cl. 199, 640 F.2d 1235, 1242 (1981).

ly none of the material constituting plaintiff's proposed supplementation of the administrative record was ever submitted to the ORA or the Civil Rights Division. It appears from the record that a large portion of the material submitted in plaintiff's proposed supplementation was obtained via a Freedom of Information Act Request submitted to the National Archives on March 28, 1999, after the complaint was filed in the instant case and a full seven months after the Civil Rights Divisions' decision. The other materials—correspondence possessed by plaintiff's father, historical documents obtained from the National Archives by the late historian Michi Weglyn, newspaper articles, and a declaration from plaintiff's father—all involve information that predates the agency's decisions herein. Plaintiff has offered no evidence to indicate that these documents were unavailable at the time of the administrative proceedings below. To the contrary, it appears that all of these documents were available, yet were not produced by plaintiff.

Plaintiff, however, argues that the normal limitations on introducing "new evidence" do not apply here because, under the Act, the onus rested on the government to investigate plaintiff's case and produce this evidence. Plaintiff contends that defendant failed to meet its statutory evidence-gathering obligations, thereby necessitating the effort to supplement the administrative record. This argument is without merit for at least two reasons.

■ First, the affirmative duty placed on defendant by the Act to use records in the possession of the United States to identify eligible individuals applies only to those individuals actually on record as residents of camps or as those excluded from the West Coast. *See* 50 U.S.C. app.1989b–4(a)(2). Other provisions of the Act indicate that other eligible individuals may notify the Attorney General of their eligibility and "provide documentation therefor." *Id.* Indeed, the regulations under the Act make clear that individuals not listed in the internment records are required to establish their entitlement to compensation. In this regard, 28 C.F.R. § 74.5(c) (1997), specifically provides that "[p]ersons not listed in the historic rec-

ords of the United States Government who volunteer information pertaining to their eligibility may be required by the Administrator to submit affidavits and documentary evidence to support assertions of eligibility." As is clear from the pleadings, plaintiff in this case was never confined in a camp during WWII and thus does not appear in any government records pertaining to camp residents. As such, under 28 C.F.R. § 74.5(c), plaintiff had an affirmative duty to provide any and all available information to the administrative bodies charged with determining his eligibility. His failure to do so cannot be remedied by this court by entertaining documents that should have been produced for consideration below.

Second, plaintiff's affirmative duty to bring forth evidence in support of his claim was reinforced by the ORA's July 23, 1997, letter informing plaintiff that he had been denied compensation under the Act. The denial letter reads, in pertinent part:

> Should you wish to appeal this decision, please fill out, sign and mail the enclosed "Notice of Appeal" form .... If you wish, you may include with your notice of appeal form a statement indicating why you believe you are eligible for redress. You may also include any documentation that you believe supports your statement.... As we have explained, you will be given the opportunity to submit additional material after the Civil Rights Division receives your notice of appeal form. Upon receiving your notice of appeal, and after giving you the opportunity to present additional information in support of your claim, the Chief of the Appellate Section will conduct a *de novo* review of your case; that is, he will undertake a separate and independent review of all the information in your case.

(underlining in original). Defendant further notified plaintiff that he could present further documentation supporting his claim for redress in the Civil Rights Division's August 18, 1997, letter acknowledging receipt of his administrative appeal, which states: "Because you have submitted a request for documentation ... we have granted you 30 days from receipt of this letter to submit further documentation in support of your claim."

Thus, under the Act and the regulations thereunder, and as emphasized in defendant's communications to the plaintiff, plaintiff clearly bore the burden of producing the evidence in question to the agency before—and not after—it reached its decision. In these circumstances, the administrative record may not be supplemented by the evidence in question based upon the "new evidence" exception.

### 3. Evidence showing that the agency failed to consider factors relevant to its determination

The foregoing discussion largely refutes plaintiff's final claim under *Esch*—that the evidence in question should be admitted to demonstrate that the agency failed to consider relevant factors.

In this regard, it is important to observe that a significant portion of the evidence offered by the plaintiff not only was not presented to the agency below, but also is apparently offered in support a new legal theory of recovery that was not argued below. Plaintiff argued before the agency that he had been denied liberty because the restrictions on his parent's ability to travel were not lifted until a date in close proximity to his birth date, at a point where moving back to the West Coast would have risked his mother's health. Plaintiff asserted that he was thereby effectively precluded from being born in his parent's home town. In the proceeding before this court, plaintiff now also argues that his father, while under no *de jure* travel restrictions, was prevented from traveling due to fears of arrest and physical harm, fears allegedly caused or at least prompted, in part, by the defendant's actions. Various documents contained in the supplemental materials clearly pertain to this new legal theory.

▃▃▃▃▃▃ Plaintiff can hardly argue that the agency below failed to consider factors relevant to a legal theory he never raised,

particularly where the theory was not obvious and irrationally neglected by the agency. Indeed, under an "arbitrary and capricious" standard, a plaintiff generally may not raise an issue before a reviewing court that it failed to raise before the agency. *See United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); *Lizut,* 717 F.2d at 1396 ("Allowing a party to withhold important issues from the board and later present them to this court would undermine the board's authority."); *Washington Ass'n for Television and Children v. FCC,* 712 F.2d 677, 680 (D.C.Cir. 1983) ("As a general rule, claims not presented to the agency may not be made for the first time to a reviewing court.").[8] Nor is this situation somehow different under the Act—indeed, even assuming *arguendo,* that the agency had an affirmative duty to develop a factual record in evaluating plaintiff's claim for redress, the agency certainly was under no legal duty to read plaintiff's mind and develop evidence to support a legal theory of which it was not aware. Because plaintiff cannot argue that defendant failed to consider its new theory as a basis for reversal, he is also in no position to seek supplementation of the record in support of that theory. Accordingly, there is no basis here for supplementing the record based on plaintiff's claim that the new evidence is needed to demonstrate that the agency failed to consider relevant factors in rendering its decision.

### B. Judicial notice

In the alternative, plaintiff requests that this court take judicial notice of the authenticity of the documents he has presented and

---

8. There are various exceptions to this rule. For example, the rule does not apply where issues by their nature could not have been raised before the agency (*e.g.,* a material change in circumstances or a serious impropriety in the administrative process), *see, e.g., Greater Boston Television Corp. v. FCC,* 463 F.2d 268, 282–84 (D.C.Cir. 1971), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972), or where an agency action is "patently in excess of [the agency's] authority," *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 312 n. 10, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979) (dictum). None of these exceptions, however, is applicable here.

the statements made therein. However, plaintiff does not request that the court take judicial notice of the "truth" of these statements. Under Federal Rule of Evidence 201(b), this court may take judicial notice of any fact that is "not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In order for a fact to be judicially noticed under this rule, "indisputability is a prerequisite." *Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1354 (7th Cir.1995).

 At the outset, this court is disinclined to use Rule 201 to circumvent the established rule requiring review in cases such as this to be based on the administrative record developed by the agency whose decision is being reviewed. This is particularly so where, as here, the extra-record evidence is being employed in support of a theory that was not presented to the agency below. Again, this is not a *de novo* proceeding in which this court is acting a fact-finder, but rather a case in which the court is called upon to afford considerable deference to fact findings made by a Federal agency. In such circumstances, discretion to take judicial notice must be exercised sparingly lest Rule 201 be wielded to create an exception that would envelop the established procedures for conducting arbitrary and capricious review. As stated by the First Circuit in *Lussier v. Runyon,* 50 F.3d 1103, 1114 (1st Cir.1995), *cert. denied,* 516 U.S. 815, 116 S.Ct. 69, 133 L.Ed.2d 30 (1995):

> Ours is a system that seeks the discovery of truth by means of a managed adversarial relationship between the parties. If we were to allow judges to bypass this system, even in the interest of furthering efficiency or promoting judicial economy, we would subvert this ultimate purpose. As Rule 201(b) teaches, judges may not defenestrate established evidentiary processes, thereby rendering inoperative the standard mechanisms of proof and scrutiny, if the evidence in question is at all vulnerable to reasonable dispute.

*See also Barr Rubber Prods. Co. v. Sun Rubber* Co., 425 F.2d 1114, 1125–26 (2d Cir. 1970) (stating similar principles), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *Korematsu v. United States,* 584 F.Supp. 1406, 1415 (N.D.Cal.1984) ("Care must be taken that Rule 201 not be used as a substitute for more rigorous evidentiary requirements and careful factfinding."). Mindful of these limitations, the court now turns to a specific consideration of the evidence for which plaintiff seeks notice.

 Certain categories of information on which plaintiff seeks notice are clearly not within the confines of Rule 201(b), specifically, the documents that were in the possession of plaintiff's father, but not in the National Archives, and the affidavit authored by plaintiff's father. Under Federal Rule of Evidence 201(b), the court cannot take judicial notice of either the authenticity or the content of these documents, as they are neither generally known nor indisputable.

 The bulk of the materials provided by plaintiff are documents allegedly from the National Archives relating to the internment of Americans of Japanese descent and to the conditions of the internment, restraint and ultimate release from restraint of Mr. Murakami's parents. To be sure, some government documents are subject to judicial notice (albeit under certain limited conditions) on the ground that information contained therein is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See, e.g., Massachusetts v. Westcott,* 431 U.S. 322, 323 n. 2, 97 S.Ct. 1755, 52 L.Ed.2d 349 (1977) (per curiam) (taking judicial notice of fishery licenses as reflected in the records of the Coast Guard's Merchant Vessel Documentation Division). The information here at issue does not reach this safe harbor. This is not a situation in which plaintiff seeks judicial notice of a simple bookkeeping entry in a generally available government record or of the mere existence of a formal government report, but rather asks this court to take judicial notice of a wide range of factual statements, some of which undoubtedly are reasonably contestable and all of which ordinarily would be subject to more rigorous evidentiary requirements and verification.

740

The court concludes that is not proper for it to take judicial notice of these documents and the statements contained therein.[9]

The remainder of the materials of which plaintiff requests this court take judicial notice are newspaper articles. Certainly, with some basic verification, this court can take judicial notice that these articles were published. But, there is a conflict of authority as to whether this court may take judicial notice of the facts reported in these articles.[10] Rather than aligning itself with one or the other branches of this authority at this time, the court will deny, without prejudice, plaintiff's request to take judicial notice of the statements in these articles and permit plaintiff to renew this request if, in support of a relevant factual assertion, it can later show why judicial notice of some aspect of these articles is appropriate. *See* Rule 201(f), Federal Rules of Evidence.

### III. Conclusion

Based on the foregoing, the court concludes that supplementation of the administrative record in this case would be inappropriate. Accordingly, plaintiff's Request to Supplement the Administrative Record and Request for Judicial Notice is hereby **DENIED.**

**9.** *See Korematsu*, 584 F.Supp. at 1415–16 (refusing to take judicial notice of specific findings of the Commission on Wartime Relocation and Internment of Civilians and government memoranda relating to the plaintiff's case). *See also Great N. Ry. v. Steinke*, 261 U.S. 119, 126, 43 S.Ct. 316, 67 L.Ed. 564 (1923) (files of General Land Office not within range of judicial notice when copies not produced in evidence at trial); *Lussier*, 50 F.3d at 1113–1114 (trial court abused discretion in taking judicial notice of details in Civil Service records). The court fails to understand the distinction plaintiff draws between taking judicial notice of the statements in these documents and the truth of these statements. If, via this request, plaintiff seeks to have this court take judicial notice that Americans of Japanese descent, including plaintiff's parents, suffered deprivations of liberty as a result of their internment and travel restrictions, the court need not do so, as the defendant has already admitted this fact in the administrative record before the court. If, plaintiff seeks to use these documents to prove that his parents did not return to California for his birth because they feared reprisals or other danger in their home town, the court has concluded above that that new theory may not be argued here, thereby rendering the requested judicial notice unnecessary.

**10.** Compare *Cofield v. Alabama Pub. Serv. Comm'n*, 936 F.2d 512, 517 & n. 6 (11th Cir. 1991) (facts contained in newspaper article not indisputably accurate), with *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458–59 (9th Cir.1995) (judicial notice taken of report of layoffs which concerned matter generally known in Southern California and subject to accurate and ready determination), and *Peters v. Delaware River Port Authority*, 16 F.3d 1346, 1356 n. 12 (3d Cir. 1994), *cert. denied*, 513 U.S. 811, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994) (notice of newspaper accounts reflecting existence of competition between state authorities).