**MIDWEST TUBE FABRICATORS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 11–773C.

United States Court of Federal Claims.

Filed Under Seal: April 23, 2012.

Reissued: April 27, 2012.

Cindy Rhodes Victor, The Victor Firm, PLLC, Sterling Heights, Michigan, for plaintiff.

David A. Levitt, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Acting Assistant At-

torney General, Civil Division, and Jeanne A. Davidson, Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, D.C. Of counsel were Elliot S. Avidan and David P. Ingold, Counsel, United States Marine Corps Systems Command, United States Marine Corps.

## OPINION AND ORDER[1]

LETTOW, Judge.

In this post-award bid protest, plaintiff Midwest Tube Fabricators, Inc. ("Midwest Tube") contends that the United States Marine Corps ("the Corps") erred in selecting Creative Logistics Ltd. ("Creative") to fulfill a contract to provide 800 Basic Issue Item ("BII") Kits to the Corps for use in vehicles travelling in severe road conditions on overseas deployments. Defendant the United States ("the government") has moved to dismiss Midwest Tube's complaint or, alternatively, for judgment upon the administrative record. Its motion to dismiss challenges Midwest Tube's standing and thus raises jurisdictional issues. The government attaches to its motion and relies upon a declaration by Corps contracting officer Dennis G. Alber. Midwest Tube has opposed the government's motion to dismiss and has submitted a cross-motion for judgment upon the administrative record. In that connection, it has moved to strike the declaration by Mr. Alber or, in the alternative, for permission to depose Mr. Alber and to file supplemental declarations of its own. This subsidiary motion is the subject of this opinion and order.

## BACKGROUND

On April 25, 2011, the Corps issued a Request For Proposals ("RFP") for 800 BII Kits. AR 3–6 to –7.[2] The kits, destined for placement in military vehicles, were to contain vehicle maintenance and emergency-preparedness items, including first aid kits, panel marker signals, and fire extinguishers. AR 3–7, –10. The amended delivery schedule required 25 kits to be delivered within 30 days of award, 75 more within 45 days, 125 more within 75 days, 100 more within 110 days, and the final 475 within 180 days. SAR 1. Midwest Tube, Creative, and eleven other firms responded to the RFP. AR 8–24. Midwest Tube's proposal promised deliveries of 25 kits within 30 days and 75 kits within 45 days, but stated that the "[r]emaining 700 kits will be delayed because of the lead time for the [f]ire [e]xtinguisher. This is a special military extinguisher that requires ballistic testing; therefore, the delivery on this item is 240 days." AR 5–14. Creative's proposal likewise promised deliveries of 25 kits within 30 days and 75 kits within 45 days, but, in contrast, promised delivery of all 800 kits within 180 days. AR 4–11. Nonetheless, Creative's proposal, similarly to Midwest Tube's, qualified its projected deliveries because of difficulties in obtaining the requisite fire extinguisher. Creative noted:

> The fire extinguisher is special.... There is only 1 supplier that has passed the performance test for this item. I have talked to this supplier and arranged for them to hold their current inventory of parts to build 200 units for the winner of this bid; these will be available within 30 days. Additional units could take 15 weeks to complete.... They have agreed to start this production, as they will surely be getting the order for all 1600 units [ (two extinguishers per kit) ]. There [are] another approx[imately] 100 units available

---

1. Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the Court of Federal Claims ("RCFC") and the protective order entered in this action, it was initially filed under seal. The parties were requested to review this decision and to provide proposed redactions of any confidential or proprietary information on or before April 26, 2012. No redactions were requested.

2. Citations to "AR ———" are references to the administrative record filed with the court on

January 13, 2012 in accord with RCFC 52.1(a). The first number in a citation to the administrative record refers to a particular tab, and the number after the hyphen refers to the particular page number of the administrative record, e.g., "AR 7–19." The pages of the administrative record are paginated sequentially without regard to the tabs.

A supplement to the administrative record was filed by the government on March 8, 2012. The supplement is separately paginated as "SAR ———."

that are on order with the government that can possibly be used if the buying activity [for those units] would accept a delayed shipment.

AR 4–11 to –12.

On June 7, 2011, the contract was awarded to Tifco Industries, Inc. AR 7–19. On June 17, 2011, however, that contract was terminated because Tifco, among other things, had not included costs for fire extinguishers in its proposal. *See* AR 13–59; Compl. Ex. 6. After Tifco revised its proposal, it was no longer considered the lowest bidder. AR 13–59. The Corps then reexamined the bids submitted to select a new awardee. *Id.* The next lowest bidder, Black & Co., was then contacted, but verification discussions with that firm disclosed that it had not quoted the correct fire extinguisher. *Id.* When Black & Co. corrected its proposal, it also was no longer the lowest bidder. *Id.*

On June 20 and June 27, 2011, Midwest Tube contacted the Corps' contracting officer, Mr. Alber, to ascertain whether the contract had been re-awarded. Compl. Exs. 8, 11. Mr. Alber responded in both instances that the contract had not yet been re-awarded. Compl. Exs. 8, 12. Midwest Tube also sent an e-mail to Mr. Alber on June 21, 2011 to encourage the Corps to ensure that the bidders' proffer of certain items, including the fire extinguisher and panel marker signal, met the specifications of the RFP. *See* Compl. Ex. 9.

On June 29, 2011, Midwest Tube and other unsuccessful offerors received letters from the Corps stating that the contract had been awarded to Creative at a contract price of $2,792,000.00. Compl. Ex. 13; *see, e.g.,* AR 12–45; AR 16–63. The parties dispute, however, the precise date on which the Corps actually selected Creative. Midwest Tube alleges that the Corps selected Creative on June 17, 2011, presumably because the award itself states that its effective date is June 17, 2011 and the letters to unsuccessful bidders are dated June 17, 2011. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss & Pl.'s Cross–Mot. for Judgment upon the Admin. Record ("Pl.'s

Cross–Mot.") at 7, 9; AR 12–45; AR 16–63. Thus, Midwest Tube alleges, the Corps' responses in June 2011 that the contract had not been re-awarded were misrepresentations. Compl. ¶ 38. The government disagrees, relying upon the declaration of Mr. Alber, which states that the June 17, 2011 dates were clerical errors and that Creative was not selected until June 29, 2011. *See* Def.'s Mot. to Dismiss or for Judgment upon the Admin. Record ("Def.'s Mot. to Dismiss") at 5–6; *id.* Ex. 1 (Decl. of Dennis G. Alber (Feb. 10, 2012)) ("Alber Decl."), ¶¶ 4–7.

On July 11, 2011, Midwest Tube filed a bid protest before the Government Accountability Office ("GAO"). Compl. ¶ 40. On September 20, 2011, GAO dismissed Midwest Tube's protest for lack of standing, holding that Midwest Tube's proposal, which promised delivery within 240 days, failed to comply with the RFP's requirement of delivery within 180 days. *See Midwest Tube Fabricators Inc.,* B–405326 (Comp. Gen. Sept. 20, 2011) (attached as Ex. 2 to Def.'s Mot. to Dismiss). Thereafter, on November 16, 2011, Midwest Tube filed a complaint in this court.[3]

Midwest Tube's complaint alleges four primary errors in the Corps' selection process. Crucially, the government's defenses as to three of these four alleged errors rest at least in part upon the Alber Declaration. Midwest Tube first alleges, as just noted, that the Corps selected Creative nearly two weeks before informing other competitors of that fact and, in the meantime, made knowing misrepresentations to Midwest Tube regarding the status of the award. *See* Compl. ¶¶ 32(i), 38. The government responds by relying upon the Alber Declaration, which states that the mismatched dates giving rise to Midwest Tube's contentions resulted from a clerical error. *See* Alber Decl. ¶¶ 4–7. Second, Midwest Tube alleges that the Corps failed to document properly its decision justifying its choice of awardee. *See* Compl. ¶ 32(g). The government again defends in part by means of the Alber Declaration, which avers that the Corps did in fact look at

---

**3.** Midwest Tube contends that it was not properly served with GAO's decision and as a result did not receive or have any notice of it until after it had filed its complaint in this court. *See* Pl.'s Cross–Mot. at 15–16.

past performance data in evaluating the bids, even though that circumstance may not be apparent from the current administrative record. *See* Def.'s Mot. to Dismiss at 16; Alber Decl. ¶ 8. Third, Midwest Tube alleges that the Corps failed to verify that Creative could supply all components of the BII Kits. *See* Compl. ¶ 34. Specifically, Midwest Tube avers that the panel marker signals required are only available from one supplier, and Creative has not placed any orders for the signals from that supplier. Compl. ¶ 34 & Ex. 14. The government, again citing the Alber Declaration, avers that the Corps did verify that Creative could supply all requisite components, including the signals. *See* Def.'s Mot. to Dismiss at 19; Alber Decl. ¶ 9. Fourth, Midwest Tube alleges that the solicitation did not adequately describe the contents of the BII Kits. *See* Compl. ¶ 32(a)-(e). The government's response to this contention rests on matters outside the administrative record, but not on the Alber Declaration. *See* Def.'s Mot. to Dismiss at 13–14.[4]

The government did not seek to supplement the record with the Alber declaration, but rather merely filed it with its motion to dismiss or, alternatively, for judgment upon the administrative record.[5] In response, Midwest Tube filed its motion to strike the declaration of Mr. Alber, or alternatively, to permit a deposition of Mr. Alber and to file supplemental declarations ("Pl.'s Mot. to Strike"). The government's response in opposition described in detail the reasons for its reliance on the Alber Declaration, including especially the circumstance that "because the procurement was conducted through the simplified procedure of [48 C.F.R. ("FAR")] Part 13, ... the administrative record ... lacks ... comprehensive documentation." Def.'s Opp'n to Pl.'s Mot. to Strike ("Def.'s

Opp'n") at 1. The government concludes by contending that "the Alber declaration is necessary to supplement the [administrative record] and enable the court to conduct meaningful review," *id.,* but that no deposition should be allowed because Midwest Tube has not identified any additional "information it could hope to obtain from deposing Mr. Alber," *id.* at 7.

Given the nature of this controversy and the need for prompt action on Midwest Tube's motion, the court held a hearing on April 16, 2012, at the end of which the court denied Midwest Tube's request to strike but granted its requests to depose Mr. Alber and to provide declarations of its own. Specifically, the court permitted a four-hour deposition of Mr. Alber and allowed Midwest Tube to submit declarations pertaining to the availability of fire extinguishers and panel marker signals for this procurement, which materials would aid the court in addressing the government's jurisdictional contentions regarding standing. This opinion follows as an expansion of the court's reasons for granting in part and denying in part Midwest Tube's motion.

## STANDARD FOR DECISION

In bid protest cases, as in any court action involving review of agency decision making, it is axiomatic that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *see also Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814,

---

4. The government additionally filed three exhibits to its reply in support of its motion to dismiss or, alternatively, for judgment upon the administrative record. *See* Def.'s Reply, Exs. 1–3. Those exhibits consist of relevant e-mail chains sent to or from Mr. Alber and Mr. Darren Williamson, a logistics specialist who was borrowed from the Department of the Army to aid the Corps in the procurement, as well as documentary technical materials concerning the items to be procured. Those further materials total 43 pages and also in effect supplement the administrative record.

5. Midwest Tube avers the Alber Declaration must be stricken because the government attached it as an exhibit to its motion to dismiss, rather than moving for leave to add it as a supplement the administrative record. However, nothing in the RCFC mandates supplementation exclusively by motion. *See* RCFC 52.1; RCFC app. C, ¶ 21. The court construes the government's submission of the declaration as a supplement to the administrative record, just as it does the exhibits appended to the government's reply.

28 L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to convert the 'arbitrary and capricious' standard [of 5 U.S.C. § 706] into effectively de novo review." *Axiom Res. Mgmt., Inc. v. United States,* 564 F.3d 1374, 1380 (Fed.Cir.2009) (some internal quotation marks omitted) (quoting *Murakami v. United States,* 46 Fed. Cl. 731, 735 (2000), *aff'd,* 398 F.3d 1342 (Fed. Cir.2005)); *see* 28 U.S.C. § 1491(b)(4) (specifying the standard for review by incorporating 5 U.S.C. § 706). Thus, "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Id.* (internal quotation marks omitted) (quoting *Murakami,* 46 Fed.Cl. at 735). That is to say, the record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act]. Faced with the request to supplement the administrative record in [a] case, the Court of Federal Claims should ... determine[ ] whether supplementation of the record [is] necessary in order not 'to frustrate effective judicial review.'" *Id.* at 1381 (quoting *Pitts,* 411 U.S. at 142–43, 93 S.Ct. 1241).

## ANALYSIS

This court should not analyze bid protest claims "in a vacuum." *Global Computer Enters., Inc. v. United States,* 88 Fed. Cl. 52, 62 (2009). When "the bare record may not disclose the factors that were considered or the [agency]'s construction of the evidence," *Overton Park,* 401 U.S. at 420, 91 S.Ct. 814, supplementation of the record is warranted. Gaps in the administrative record may arise in a variety of circumstances and require supplementation for a number of reasons. *See, e.g., Vanguard Recovery Assistance, J.V. v. United States,* 99 Fed.Cl. 81, 100 (2011) (finding a gap regarding competing bidders' past performance when legally required past-performance questionnaires were not completed by the agency and thus were not part of the record); *Pitney Bowes Gov't Solutions, Inc. v. United States,* 93

Fed.Cl. 327, 334–36 (2010) (allowing supplementation to reconstruct information contained in bid-proposal evaluations destroyed by the procuring agency's contracting officer); *L–3 Commc'ns Integrated Sys., L.P. v. United States,* 91 Fed.Cl. 347, 354–62 (2010) (concluding that a protestor's allegations of bad faith or bias were sufficiently well grounded to warrant supplementation); *Ash-Britt, Inc. v. United States,* 87 Fed.Cl. 344, 366 (2009) (calling for information about conceded errors in the administrative record), *clarified on other grounds,* 87 Fed.Cl. 654 (2009); *Alabama Aircraft Indus., Inc.-Birmingham v. United States,* 82 Fed.Cl. 757, 771–72 (2008) (determining that information related to the past-performance evaluation of a bidder had been omitted from the record, in part on grounds of attorney-client privilege, which ground had been waived); *Asia Pac. Airlines v. United States,* 68 Fed.Cl. 8, 19 (2005) (finding that an agency's decision making was so informal that the agency's rationale "was not apparent from the administrative record"), *appeal dismissed,* 175 Fed. Appx. 346 (Fed.Cir.2006); *J.C.N. Constr. Co. v. United States,* 60 Fed.Cl. 400, 404 n. 8 (2004) (determining that disparate evaluations of past-performance data were not explained in the record before the court), *aff'd,* 122 Fed.Appx. 514 (Fed.Cir.2005) (per curiam).

Most pertinent to this case, a gap "may exist largely because of the informal nature of the agency's action." *Asia Pac. Airlines,* 68 Fed.Cl. at 18. The procurement at issue here was governed by Part 13 of the FAR, which is titled "Simplified Acquisition Procedures" and instructs the purchasing agency to "[k]eep documentation to a minimum." FAR § 13.106–3(b). That objective was certainly achieved in this instance. As initially filed, the administrative record in this case was comprised of 68 pages and the supplemental record added only 18 pages of materials consisting of amendments to the "Combined Synopsis/Solicitation" and an attachment to a Business Clearance Memorandum. Additionally, the government advised that some electronic records were not readily retrievable because Mr. Alber left his position as a contracting officer at the

Corps in August 2011, soon after the award at issue in this case. *See* Alber Decl. ¶ 10.[6]

One of the gaps in the record involves the dispute over when the contract was awarded to Creative. In this respect, the Alber Declaration states that there are errors in the administrative record related to the timing of Creative's award. "Allowing a protest to be decided upon an [administrative record] which does not reflect what actually transpired would perpetuate error and impede and frustrate effective judicial review." *AshBritt,* 87 Fed.Cl. at 366.

A second gap involves the dispute over whether Creative's panel marker signals were compliant with the RFP. Midwest Tube asserts that the signals could be acquired from only one source and that Creative did not do so. *See* Compl. ¶ 34. The Alber Declaration, however, states that the Corps confirmed that Creative's proffered panel marker signals conformed to the RFP. Alber Decl. ¶ 9. The administrative record does not yield information pertinent to this dispute.

A third and final gap concerns the parties' disagreement as to whether Midwest Tube's and Creative's bids complied with the RFP. The two firms' bids suggest that both were dependent upon the sole manufacturer of the special fire extinguisher, which would be subject to delivery constraints regardless of the purchaser. *Compare* AR 4–11 to –12, *with* AR 5–14. Yet Creative promised full delivery of the fire extinguishers within 180 days, while Midwest Tube promised full delivery of them within 240 days. The RFP required full delivery within 180 days. SAR 1. The government has taken the position that consequently Midwest Tube's bid was noncompliant, Creative's bid was compliant, and thus Midwest Tube lacks standing to bring this protest. Nothing in the record addresses why the delivery dates of the special fire extinguishers should or could vary between the competing bidders and whether the agency accounted for this discrepancy in its decisionmaking even though both bidders specifically stated

caveats about the production rate of the fire-extinguisher supplier. *See NMB Singapore Ltd. v. United States,* 557 F.3d 1316, 1319 (Fed.Cir.2009) (an agency's explanations "do not have to be perfect," but they "must be reasonably discernable to a reviewing court" (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983))). Further, this third gap in the record implicates standing, which is a jurisdictional issue. "If a material factual dispute arises regarding jurisdiction, the court may institute proceedings to resolve the pertinent jurisdictional issues." *Nez Perce Tribe v. United States,* 83 Fed.Cl. 186, 187 (2008) (citing, *e.g., Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).

With the need for supplementation established, the resulting question becomes the proper means for obtaining pertinent information. In most circumstances, the favored method is to remand to the agency. *See Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1338–39 (Fed.Cir.2001) (citing *Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 654, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); *Florida Power & Light,* 470 U.S. at 744, 105 S.Ct. 1598). "However, this preferred course seems out of place in [the] area of government procurement. The decision at issue is not the decision of the agency or agency head, but the decision of the contracting officer—an individual within the agency." *Id.* at 1339 (internal quotation marks omitted). In addition, "[i]n exercising jurisdiction under [28 U.S.C. § 1491(b) ]" to hear and decide bid protests, this court is obliged to give "due regard" to "the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3). Here, Mr. Alber is the contracting officer who made the relevant decisions, and the most expeditious course of action would be to allow his deposition. *See Vanguard,* 99 Fed.Cl. at 101 (quoting 28 U.S.C. § 1491(b)(3)). Thus, Midwest Tube may depose him for four hours. *See, e.g., Impresa Construzioni,* 238 F.3d at 1339; *Vanguard,* 99 Fed.Cl. at 101; *Pitney Bowes,*

---

**6.** Some of those records, consisting of e-mail chains and technical documents, were recently retrieved and made available to Midwest Tube and the court when the government appended those further records to its reply brief in support of its motion to dismiss or for judgment on the administrative record. *See supra,* at 572 n. 4.

93 Fed.Cl. at 336. Additionally, Midwest Tube may submit declarations of its own regarding the gaps identified in the record relative to the government's jurisdictional contentions about Midwest Tube's standing, *i.e.*, providing information not now available concerning the supply of fire extinguishers and panel marker signals for the BII Kits. Such supplemental evidence—the Alber Declaration, Mr. Alber's deposition, and any declarations submitted by Midwest Tube—will be afforded only the weight appropriate to a gap-filling role. This court is guardedly skeptical of declarations that amount to "post-hoc interpretations, recollections, and excuses." *Vanguard*, 99 Fed.Cl. at 99; *see Holloway & Co. v. United States*, 87 Fed.Cl. 381, 392 (2009) (a court "must be wary" of receiving evidence in a bid protest that was created only during proceedings before GAO because that evidence "may involve a 'clarification' that actually serves as a post-hoc rationalization"). Nonetheless, when the "parties have submitted a very incomplete record[,] . . . [w]e must do the best we can with such a situation." *The Owego*, 270 F. 967, 967 (2d Cir.1921).

## CONCLUSION

For the reasons stated at the hearing held on April 16, 2012 and set out in this opinion, the court GRANTS IN PART and DENIES IN PART plaintiff's Motion to Strike. Specifically, the court DENIES plaintiff's request to strike the Alber Declaration, but GRANTS plaintiff's requests to depose Mr. Alber and to submit supplemental declarations. Plaintiff may depose Mr. Alber for up to four hours and may file supplemental declarations related to the supply of fire extinguishers and panel marker signals for this procurement.

It is so ORDERED.