Guy **SPEZZAFERRO**, et al., Petitioners,

v.

**FEDERAL AVIATION ADMINISTRATION,**
Respondent.

**Appeal No. 86–1026.**

United States Court of Appeals, Federal Circuit.

Dec. 5, 1986.

---

William J. Lafferty, Boston, Mass., argued for petitioners.

Diane R. Liff, Asst. Gen. Counsel for Litigation, Office of the Gen. Counsel, Dept. of Transportation, of Washington, D.C., argued for respondent. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Sandra P. Spooner, and Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C.

Before SMITH, Circuit Judge, BENNETT, Senior Circuit Judge, and NEWMAN, Circuit Judge.

BENNETT, Senior Circuit Judge.

This is an appeal from the final decision of the Merit Systems Protection Board (MSPB or board) in *Spezzaferro v. Federal Aviation Administration*, 29 M.S.P.R. 412 (1985), which denied a back pay claim that the calculation of overtime payments to reinstated air traffic controllers by the Federal Aviation Administration (FAA or agency) was improper and which also denied an extensive discovery request for agency payroll records. We affirm.

## BACKGROUND

Petitioners-appellants are 29 air traffic controllers who were removed by adverse action from their positions because of alleged participation in an illegal strike in 1981. Subsequently, the adverse actions were canceled and they were reinstated to their former positions. Petitioners re-

ceived all accrued benefits, including back pay which included pay for the average overtime hours experienced at their respective facilities during their periods of removal, together with compensation for the time period after their reinstatement until their recertification. Dissatisfied with this adjustment, petitioners sought to compel the payment of additional back pay for overtime. To support their claimed entitlement they demanded extensive discovery of FAA personnel and payroll records in addition to those voluntarily provided by the agency. The broad discovery requests were denied.

The back pay calculation issue for the reinstated air traffic controllers has been extensively litigated. Petitioners have provided the court with a list of 64 MSPB docket entries in the case. We are told that altogether there are 378 reinstated controllers in the same situation. The FAA has agreed that the benefits already awarded to the 29 petitioners should also go to the others who are similarly situated but not involved in the present litigation. Petitioners represent that, should they be successful in this appeal, many millions of dollars for additional overtime would be due reinstated controllers on a nationwide basis.

In its final decision on December 5, 1985, the MSPB found respondent's method of calculating the overtime awards to be reasonable, fair, and in compliance with board orders. The MSPB also affirmed the denial of the numerous discovery requests, noting that this is a procedural matter fully within the discretion of the board's presiding official who rendered the initial decision. Since petitioners had not sought review of the presiding official's denial of an evidentiary hearing, the board did not rule on this issue. Petitioners now seek reversal of the board decision and a remand with instructions to the MSPB to reopen the record and permit discovery of FAA payroll records of controllers who were not removed. They hope to show that both the FAA method of computing overtime and the results of that computation were improper and inadequate. They seek, also, to require the MSPB to conduct an evidentia-ry hearing. Attorney fees and costs are also demanded.

## OPINION

The issue central to this appeal is the FAA method of calculating overtime pay, as approved by the MSPB. The FAA requested an opinion from the Comptroller General concerning the overtime back pay. His opinion of August 23, 1983, stated in pertinent part:

> Therefore, we conclude that the make-whole remedy provided by the Back Pay Act requires a determination in each case of how much overtime the restored controller would have worked, based on that controller's prior overtime assignments or upon the experience of similar controllers who were not removed, and pay for that overtime must be included in the backpay award.

*Matter of Ronald J. Ranieri,* Dec. of Compt. Gen., B–207997.2 (Aug. 23, 1983).

The agency's method of calculating the overtime back pay amounts involved first calculating the total number of overtime hours worked at each FAA facility by full-time nonsupervisory, nonstriking controllers. This information was developed for each 2–week pay period during the normal course of business. The agency then totaled the number of such employees available to work as controllers during the strike at each location. The first figure was divided by the second to determine the average number of overtime hours worked at each facility in each pay period by full-time nonsupervisory controllers. The FAA then added the resulting average hours per pay period to the back pay computation as overtime for each reinstated appellant who was off the FAA payroll for the period of the canceled adverse actions.

The FAA provided to petitioners a computer print-out which was generated from the relevant payroll data. Petitioners contend that the number of employees used in the calculation is inflated and the number of overtime hours is correspondingly deflated. They base this contention on an

affidavit by their counsel prepared from information gleaned from conversations of petitioners with some nondischarged controllers. Their desire for discovery of the payroll records of nonstriking, nondischarged employees is to verify their suspicion of inaccuracies. Petitioners argue that the bare print-outs furnished to them are insupportable without the data on which they are based.

The board concluded that the formula used by the FAA was a reasonable and workable method, that the agency had shown by preponderant evidence that its method of calculation was proper, and that there had been no abuse of discretion in the denial of petitioners' discovery. The board also concluded that the "discovery request was unduly burdensome and because the agency had already provided them with the print-outs generated from the requested payroll data, it was unlikely that granting appellants' request would produce evidence not already made available to appellants, albeit in a different form." 29 M.S.P.R. at 414.[1]

■ We initially note that the government's argument, first reflected in the board's opinion, that the "appellants were not prejudiced by any rulings of the presiding official even if in error," 29 M.S.P.R. at 414, is wholly without merit. It is insufficient to conclude that an error is not harmful without explaining why or without referring to what rulings are referenced by the word "any."

The government's primary argument is that it had voluntarily made available to petitioners the material on which the overtime calculations were based and that the requested documents would shed no additional light on the accuracy or fairness of the agency's selected method of overtime calculation. In light of that, the government contends that the request to produce the payroll records of hundreds of nonstriking controllers from over 400 FAA facilities for a period of about 18 months would be unduly burdensome. Furthermore, the government argues that the petitioners have not demonstrated that the board's denial of the requested discovery was an abuse of discretion.

The crux of the petitioner's argument is that denial of their requests for discovery of payroll records was in error because it prevented them from acquiring sufficient information to raise specific objections to the FAA's calculation method and results, which were later ratified by the MSPB. In response to the government's arguments that the requested discovery is unduly burdensome, the petitioners allude to an offer made in one of their motions to the MSPB that the records from a small FAA facility in Rhode Island be tested initially to determine the accuracy of the overtime calculations and the underlying data for that facility. Nowhere do we find any commitment by either party that whatever results obtained would be applied uniformly to all facilities. Petitioners conceded at oral argument that they would drop their requests for further discovery if the examination of that facility yielded no irregularity in method or data. On the other hand, if the examination of the Rhode Island facility yielded any irregularity whatsoever, the petitioners would apparently demand a similar examination of the payroll records of all FAA facilities nationwide.

In evaluating these conflicting positions, it is necessary to look back at the task faced by the FAA in calculation of overtime for the hundreds of restored controllers. The air traffic controller system underwent dynamic and constant change during the restaffing efforts following the 1981 strike. Within that system, individual controllers might not have worked overtime because of illness, leave, or rejection of it. Others certainly worked more overtime than the average. Since the system and individual circumstances obviously could not be reconstructed accurately with any certainty to determine the precise

---

1. Although MSPB proceedings are not governed by the Federal Rules of Civil Procedure, it is instructive to note that Rule 26(b) which authorizes discovery of relevant matter limits it, in the court's discretion, where unreasonably cumulative, duplicative, or unduly burdensome.

amount of overtime that any particular petitioner would have earned if not removed, it was necessary to arrive at a reasonable generalized rule that was fair to all and that made each of the restored controllers as nearly whole as possible. To accomplish this result, the agency relied on its official who was responsible for maintaining, using, and developing overtime data obtained from all FAA facilities nationwide. His affidavit outlined the method employed, which was discussed above.

The method chosen by the agency was not the only acceptable one indicated by the Comptroller General. But, the board concluded that the methodology employed met both his requirements and the statutory requirement that back pay include "normal" earnings. 5 U.S.C. § 5596(b)(1)(A)(i) (1982). The agency computation was based on computer payroll records kept in the regular course of business. The MSPB presiding official required the agency to demonstrate that its "calculations were accurate and were based on reliable and relevant data." The board was satisfied that the agency had so demonstrated. The MSPB accepted this affidavit as preponderant credible evidence at the agency level and held that it had been unrebutted.[2]

With respect to discovery, the board accords broad discretion to its presiding officials. 5 C.F.R. § 1201.41 (1982). Absent a showing of abuse of such discretion, the board will not substitute its judgment for that of the presiding official with respect to discovery. 29 M.S.P.R. at 414. No abuse of discretion was found by the board in this case. The board found that the requested documents would shed no light on the accuracy or fairness of the agency's selected method of calculating overtime as approved by the Comptroller General. *Id.*

This court's standard of review of MSPB decisions is established by statute. 5 U.S.C. § 7703(c) (1982). A board decision must be sustained unless found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or unsupported by substantial evidence. *Hayes v. Department of the Navy,* 727 F.2d 1535 (Fed.Cir.1984). In procedural matters such as discovery or an attempt to reopen a record, as here, the discretion accorded to the board and its officials must be shown to have been abused. That is not established here nor has bad faith by the agency been shown. We do not decide what this court would have done on the discovery issue had it been trying the case. We do not second-guess the trial tribunal on procedures except where the abuse of discretion is clear and harmful or where exceptional circumstances are present which fall within the terms of section 7703(c). *See Bowman Transportation v. Arkansas-Best Freight System,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *City of Wausau v. United States,* 703 F.2d 1042, 1044 (7th Cir.1983). Government officials are presumed to carry out their duties in good faith. Petitioners have not provided any credible evidence to overcome that presumption. Unsubstantiated suspicions and allegations are not enough. The proof must be almost "irrefragable." *Sanders v. United States Postal Service,* 801 F.2d 1328, 1331 (Fed.Cir.1986); *Gonzales v. Defense Logistics Agency,* 772 F.2d 887, 889 (Fed.Cir.1985); *Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984); *Poschl v. United States,* 206 Ct.Cl. 672, 692 (1975).

Petitioners also seek a hearing which was denied to them by the MSPB presiding official. His grounds for the denial were that they had no absolute right to a hearing and had offered no substantial reasons

2. The only "evidence" offered to rebut the official's affidavit was the affidavit of the petitioners' attorney which was based on hearsay, double hearsay, rumor, innuendo, and self-serving statements without probative value. The affidavit is a textbook example of the reasons justifying the existence of the hearsay rule. *Cf. Sanders v. United States Postal Service,* 801 F.2d 1328, 1331 (Fed.Cir.1986). Even if the hearsay statements as to overtime hours earned by certain individuals were accepted as relevant evidence, they only go to show that certain individuals worked more overtime than the average, not that the data used by the FAA in compiling the average was incorrect.

for it. Petitioners deny the inadequacy of their reasons, which have been discussed. They now contend that absent the discovery that they sought, they should have been accorded a hearing at which they could have examined agency officials to determine the accuracy of data relied upon for the grand totals in the print-outs furnished to them, and thus test respondent's affidavit in support of it. Failure to provide the hearing is described as an abuse of discretion. Absent any such abuse, whether to allow a hearing is up to an agency. *City of Wausau*, 703 F.2d at 1044.

■■■ If denial of a hearing by the presiding official was error it could have been corrected on appeal to the board where a hearing is authorized by statute and regulation. 5 U.S.C. § 7701(a); 5 C.F.R. § 1201.24 (1982). The statute provides, however, that appeals shall be processed in accordance with regulations of the board. The cited regulation provides that a petition for appeal to the board must request a hearing if one is desired and that while the right to it exists, alternatively, the employee may choose to have the determination based on the record. Unfortunately for petitioners they did not request a hearing before the board and the board opinion makes no reference to this issue. By this election to rest on the record, they have waived their claims of prejudicial error with respect to denial of a hearing by the presiding official whose initial decision was appealed on other grounds. *Ahlberg v. Department of Health & Human Services*, 804 F.2d 1238 (Fed.Cir.1986). Authorities relied upon by petitioners to show their entitlement to a hearing are therefore inapposite because the facts and issues therein are not similar to those here. Since the hearing issue was not raised before the board, we do not consider it on this appeal. *Sanders*, 801 F.2d at 1332; *Cecil v. Department of Transportation*, 767 F.2d 892, 894 (Fed.Cir.1985); *Synan v. Merit Systems Protection Board*, 765 F.2d 1099, 1101 (Fed.Cir.1985).

Petitioners' demand for attorney fees and costs is mooted by our resolution of the issues discussed above.

AFFIRMED.