**OFFICE DEPOT, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**Staples, Inc., Intervenor-defendant.**

**No. 10–335 C.**

United States Court of Federal Claims.

Aug. 23, 2010.[1]

1. This opinion was issued under seal on June 25, 2010. Pursuant to ¶ 2 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

John G. Horan, Washington, DC, for plaintiff. Luke W. Meier and Steffen G. Jacobsen, Washington, DC, of counsel.

Robert C. Bigler, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Brian M. Simkin, Assistant Director, Washington, DC, for defendant.

Jonathan S. Aronie, Washington, DC, for intervenor-defendant. Anne B. Perry, Washington, DC, of counsel.

## OPINION AND ORDER

BUSH, Judge.

This bid protest concerns the award of a large office supplies contract by the Federal Deposit Insurance Corporation (FDIC). On June 18, 2010, plaintiff filed a motion (Pl.'s Mot.) to supplement the administrative record (AR) with deposition testimony. Plaintiff Office Depot, Inc. (Office Depot) seeks to depose Mr. Curtis Courtney, Senior Contract Specialist at the FDIC, regarding "mobile telephone discussions that are not memorialized in any manner in the record." Pl.'s Mot. at 1. According to plaintiff, "the FDIC's conduct [in this procurement] cannot be explained absent an appearance of bias" in favor of Staples, Inc. (Staples), the contract awardee. Id. Plaintiff asserts that the deposition of Mr. Courtney "will supplement obvious and material omissions in the administrative record," "so that the Court can properly assess whether FDIC had actual or perceived bias in favor of Staples." Id. at 2.

Staples and the government responded to plaintiff's motion on June 22, 2010, and plaintiff replied on June 23, 2010 (Pl.'s Reply). The briefing schedule of this bid protest requires prompt resolution of this dispute.[2] *See* Order of June 4, 2010. For the reasons set forth below, the court denies plaintiff's motion.

## DISCUSSION

### I. Supplementation of the Administrative Record

#### A. *Axiom*

In *Axiom Resource Management, Inc. v. United States,* 564 F.3d 1374 (Fed.Cir.2009), the United States Court of Appeals for the Federal Circuit identified the acceptable circumstances under which the administrative record may be supplemented in a bid protest. The *Axiom* panel criticized a decision of this court which permitted supplementation of the administrative record in a bid protest, and criticized the trial court's over-broad reliance on *Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir.1989), a case which provides a list of justifications for the supplementation of the administrative record of an agency action. *Axiom,* 564 F.3d at 1379–81.

■ The court notes that the *Axiom* panel adopted a restrictive standard for supplementation of the administrative record in a bid protest, and favorably cited *Murakami v. United States,* 46 Fed.Cl. 731 (2000), *aff'd,* 398 F.3d 1342 (Fed.Cir.2005). *Axiom,* 564 F.3d at 1380. The *Axiom* standard for supplementation of the administrative record in a bid protest is a direct quotation from *Murakami,* stating that "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* (quoting *Murakami,* 46 Fed.Cl. at 735). The Federal Circuit relied on the cases cited by this court in *Murakami* to conclude that "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary

and capricious" standard into effectively de novo review.'" *Id.* (quoting *Murakami,* 46 Fed.Cl. at 735 and citing *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985); *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). The thrust of the *Axiom* decision, and *Murakami,* is that this court must exercise restraint when considering whether or not to supplement the administrative record in a bid protest. *See id.* (favoring a "more restrictive approach" and questioning the vitality of *Esch* ) (citations omitted); *Murakami,* 46 Fed.Cl. at 735 (stating that the construction of the *Esch* justifications for allowing supplementation of an administrative record should be "extremely limited") (citations omitted). For these reasons, this court must carefully consider whether a deposition of Mr. Courtney is a proper supplement to the administrative record in this case. In essence, the court must decide whether, absent a deposition of Mr. Courtney on the topics suggested by plaintiff, the administrative record will not permit an effective judicial review of the procurement in question.

#### B. Allegations of Bias

■ A court may order depositions to supplement the administrative record when "the record [i]s inadequate to" explain a contracting officer's procurement decision. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1337 (Fed.Cir.2001). The agency's explanation of its decision in a deposition may be ordered "if such an explanation is required for meaningful judicial review." *Id.* at 1338 (citations omitted). The Federal Circuit, however, noted in *Impresa* that "the agency decision is entitled to a presumption of regularity[, and b]ecause of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious." *Id.* (citations omitted). "The

---

**2.** Only the facts essential to the resolution of plaintiff's motion are discussed in this opinion. In addition, none of the court's brief recitation of facts herein should be construed to address the merits of plaintiff's bid protest or to constitute findings of fact that cannot be challenged by the parties in subsequent briefing.

litigant challenging that presumption necessarily bears a heavy burden." *Id.* In *Impresa,* one of the "rare cases" requiring deposition of an agency's contracting officer, no rationale for the contracting officer's responsibility determination was given in the administrative record, and evidence before the court raised "serious questions" as to the responsibility of the contract awardee. *Id.* at 1338–40.

In another decision by the Federal Circuit, this court's refusal to order depositions to supplement the administrative record in a bid protest was affirmed:

> The appellant also argues that the Court of Federal Claims improperly refused to allow discovery regarding alleged bias of the Air Force in the procurement process. An agency decision is entitled to a presumption of regularity. *Impresa Construzioni Geom. Domenico Garufi,* 238 F.3d at 1338. "[D]iscovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's [decision]." *Id.* at 1341. In this case, [plaintiff] has pointed to no record evidence of bias. Instead it has merely reiterated its contentions that the Air Force erred in evaluating the proposals. This is not evidence of bias, and it is insufficient to overcome the presumption that the contracting officer acted in good faith. *Spezzaferro v. Fed. Aviation Admin.,* 807 F.2d 169, 173 (Fed. Cir.1986) (to overcome the presumption of good faith, "[t]he proof must be almost irrefragable") (internal quotation and citation omitted); *cf. Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (holding that evidence of bias sufficient to require recusal of a judge must come from an extrajudicial source, rather than merely from unfavorable rulings). Therefore, the court did not err in refusing discovery on alleged bias.

*Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1323 n. 2 (Fed.Cir. 2003) (*ITAC*).

█ There are few post-*Axiom* decisions from this court that have discussed requests to supplement a bid protest administrative record in order to support allegations of bad faith or bias by government procurement officials.[3] The court denied a request for supplementation of the record in a recent case:

> [W]here the procuring agency has provided for its decision a reasonable explanation, borne out by an administrative record that otherwise appears complete[,] … the proffered extra-record material must indicate some personal animus or bias on the part of agency officials, reveal a latent inconsistency in the existing record, or otherwise give some indication that the agency's explanation is pretextual. Absent this threshold showing, a plaintiff[']s bare allegations of bad faith are insufficient to place the issue or the proffered extra-record evidence before the court.

*Madison Servs., Inc. v. United States,* 92 Fed.Cl. 120, 130 (2010) (*Madison Services*) (citation omitted). In another case, the court allowed depositions, noting, however, that a protestor's allegations must be supported by a strong evidentiary showing of bias. *See Pitney Bowes Gov't Solutions, Inc. v. United States,* 93 Fed.Cl. 327, 332–33 (Fed.Cl.2010) (*Pitney Bowes*) ("The strong showing [of bad faith or bias] must have an evidentiary foundation and not rest merely on counsel's argument, suspicion, or conjecture." (citing *Madison Services,* 92 Fed.Cl. at 130–31)). In *Pitney Bowes,* the allegations of bias were founded on "a friendly, personal relationship" between an evaluation panel member and a subcontractor of the contract awardee, and were buttressed by additional allegations of spoliation of evidence, where individual ratings of proposals by evaluation panel mem-

---

3. Decisions in other cases before this court are not binding in this proceeding. *See W. Coast Gen. Corp. v. Dalton,* 39 F.3d 312, 315 (Fed.Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.") (citations omitted). Pre-*Axiom* cases in this court had very little precedential guidance from the Federal Circuit, other than *Impresa* and *ITAC,* on the topic of proper supplementation of the administrative record in bid protests. In the interests of judicial economy, the court will not discuss non-precedential pre-*Axiom* cases in this opinion.

bers were destroyed by the procuring agency. *Id.* at 329–30, 326. In a third case, the court allowed supplementation of the administrative record with documents that showed, to cite one example, evidence of "an atmosphere of fear and intimidation in the [Air Force] acquisition community under Ms. [Darleen] Druyun." *L–3 Comnc'ns Integrated Sys., L.P. v. United States,* 91 Fed.Cl. 347, 362 (2010) (*L–3 Communications* ). Therein the court determined that allegations of bias were well-founded given the fact that Ms. Druyun rescinded the appointment of the original source selection official, substituted herself in that role and then changed ratings to bolster the selection decision. *Id.* at 356.

 This court must follow *Axiom, Impresa* and *ITAC.* If the administrative record does not permit effective judicial review of the procurement, supplementation with depositions or other evidence may be necessary. *Axiom,* 564 F.3d at 1380. If the record does not show the reasoning of a contracting officer's decision, and serious questions as to the rationality of the procurement decision have been raised by the evidence, supplementation of the record with depositions may be warranted. *Impresa,* 238 F.3d at 1338–40. In addition, supplementation of the administrative record in a bid protest, in response to allegations of bias, must be supported by at least some evidence of bias. *ITAC,* 316 F.3d at 1323 n. 2.

This court has described the amount of evidence of bias required to support supplementation of the administrative record in a variety of ways. *See, e.g., L–3 Communications,* 91 Fed.Cl. at 356 (describing the threshold level of evidence as "sufficiently well grounded" allegations of bad faith or bias); *Pitney Bowes,* 93 Fed.Cl. at 332–33 (stating that "the court will entertain extra[-]record evidence and permit discovery when there has been a 'strong showing of bad faith or improper behavior' such that without discovery the administrative record cannot be trusted" (citing *Ala. Aircraft Indus., Inc.Birmingham v. United States,* 82

Fed.Cl. 757, 766 (2008))). For plaintiff to succeed here, there must be a "strong showing" of evidence of bad faith or bias. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (noting that where an agency has presented findings in support of its decision, "there must be a strong showing of bad faith or improper behavior before such inquiry [seeking testimony explaining the agency action] may be made"), *overruled on unrelated grounds by Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). With this standard in mind, the court turns to plaintiff's allegations in support of its motion to supplement the administrative record in this case.

## II. The TAA Compliance Communications

 On January 13, 2010, Mr. Courtney emailed Staples, stating that he "need[ed] to know which products are TAA compliant." AR at 2578. In Staples' proposal certain core items, and alternates to those core items, had been marked "TBD" (presumably, to be determined) in the "TAA Compliant" column.[4] *See* AR at 312–17. Mr. Courtney informed Staples that if no further information was forthcoming, "I will have to assume all the TBDs are non TAA compliant and be evaluated as such." AR at 2578. Staples responded on January 14, 2010 that

> At this time we are not in position to certify that the items in question are TAA compliant based on the information that we have. We are working with the manufacturing community to obtain that certification. We would agree that without that certification that you should consider these items non-compliant for your analysis.
>
> . . . .
>
> Please consider that all of the distributors competing to support your business should be offering the same products that are manufactured in the same countries.

4. The solicitation informed offerors that the "FDIC will evaluate offers in accordance with the policies and procedures of the Trade Agreements Act [TAA]." AR at 161. Each line item in the price schedule set forth in the solicitation had a "TAA Compliant" blank to be filled in by the offeror. AR at 95–98.

AR at 2573. On January 15, 2010, Mr. Courtney emailed three other offerors to request clarification of the "TAA Compliant" data entries in their price schedules. AR at 2580–86. The record shows that Staples received more frequent communication from Mr. Courtney with respect to the TAA compliance matter than these other three offerors, and that his communications with Staples spread over a longer period of time, from January 13 to January 27, 2010.

Plaintiff concludes that the communications between Mr. Courtney and Staples permitted Staples an "unfair opportunity to revise its proposal." [5] Pl.'s Mot. at 2. Plaintiff supports this conclusion with a discussion of how Mr. Courtney's communications with Staples allegedly violated FDIC procedures. *Id.* at 6–7; Pl.'s Reply at 4–5. Plaintiff also alleges that the TAA Compliance data provided by Staples as a result of these communications was "highly prejudicial" because of "its role in justifying Staples' award." Pl.'s Reply at 6. Plaintiff also notes that Office Depot was not provided a similar opportunity to revise its TAA Compliance data. *Id.*

The court does not find that plaintiff has made a strong showing of bias. The arguments made in plaintiff's motion and reply go more to the merits of whether the procurement decision by the FDIC was flawed and may be overturned by this court, than to any allegations of bias or favoritism. The court does not see here the rare case where an award decision is not explained in the administrative record of a bid protest. Mr. Courtney's actions, as documented in the administrative record, give a clear picture of his communications with Staples. The evaluations of proposals and the award decision are also documented. This case is thus unlike *Impresa* and does not require supplementation of the administrative record. *Cf.* 238 F.3d at 1339 (stating that the purpose of the deposition in that case was to add to "the record the basis for the contracting officer's [decision]").

**5.** Plaintiff points to evidence that a Staples representative and Mr. Courtney engaged in "additional discussions" regarding Staples' proposal by telephone. Pl.'s Mot. at 3. The substance of that conversation is adequately represented in the administrative record. AR at 2571. There is

## III. Corporate Data Request

Plaintiff challenges certain requests made by Mr. Courtney for data from Staples. Pl.'s Mot. at 4. Mr. Courtney contacted Staples on January 21, 2010, questioning whether one of the identifying numbers on Staples' corporate information was correct. AR at 2627. The correct information was supplied later that day. AR at 2626 (supplying a federal tax identification number and a "Duns" number). The next day Mr. Courtney requested "your current Dun and Bradstreet Report or financial statements that detail Staples['] current financial capability and standing." AR at 2629. That information, too, was provided the same day. AR at 2628. Plaintiff describes this exchange as an opportunity for Staples to "submit additional financial information not permitted . . . other offerors." Pl.'s Mot. at 4.

Again, the court does not find a strong showing of bias here. Whether Mr. Courtney's requests for financial data, and for information regarding other aspects of Staples' proposal, were proper under the law goes to the merits of this bid protest. These requests for information are documented in the administrative record, and effective judicial review is possible on this record. *Axiom*, 564 F.3d at 1380.

## IV. Absence of Communications with Office Depot

Plaintiff also asserts that the treatment of Office Depot by the FDIC was "materially different" from the treatment of Staples. Pl.'s Mot. at 4. Plaintiff notes that the weaknesses that the FDIC found in Office Depot's proposal were not the subject of communications with Office Depot, whereas the FDIC "consistently sought clarifications from Staples on all aspects of its proposal." Pl.'s Reply at 7. Plaintiff argues that this failure on the part of the FDIC to communicate with Office Depot constitutes "disparate

no other evidence or indication of substantive telephone conversations between Mr. Courtney and Staples' employees. Indeed, Mr. Courtney on one occasion stated that "email is the best way to contact me." AR at 2623.

treatment." *Id.* at 8. Plaintiff suggests that the disparity in treatment "should be explained by witness testimony." *Id.*

The court does not find that the record here shows strong evidence of bias. A challenge to this contract award on the grounds of unequal treatment goes to the merits of this bid protest. In *ITAC*, for example, similar allegations of unequal communications were alleged by the protestor, but these allegations did not support supplementation of the record to explain the agency's actions. 316 F.3d at 1317, 1323 n. 2. Mr. Courtney's communications with the offerors in this procurement are presented in the administrative record. His actions are reviewable, and supplementation of the administrative record is not warranted in this instance.

## CONCLUSION

The court denies plaintiff's motion to supplement the administrative record with the deposition of Mr. Courtney. The briefing schedule in this bid protest remains unchanged.

Accordingly, it is hereby **ORDERED** that

(1) Plaintiff's Motion to Supplement the Administrative Record with Deposition Testimony, filed June 18, 2010, is **DENIED;**

(2) On or before **July 8, 2010,** counsel for the parties shall **CONFER** and **FILE** with the Clerk's Office a **redacted copy** of this opinion, with any material deemed proprietary marked out and enclosed in brackets, so that a copy of the opinion can then be prepared and made available in the public record of this matter; and

(3) The Scheduling Order of June 4, 2010 remains unchanged.