NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**REGINA G. DAVIS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2017-1740

---

Petition for review of the Merit Systems Protection Board in Nos. DA-1221-12-0640-W-6, PH-315H-12-0551-I-3.

---

Decided: September 11, 2017

---

REGINA G. DAVIS, San Antonio, TX, pro se.

MELISSA BAKER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., L. MISHA PREHEIM.

---

Before NEWMAN, DYK, and TARANTO, *Circuit Judges.*

PER CURIAM.

In May 2011, the Department of the Army removed Dr. Regina Davis from her position as a Clinical Psychologist in the Warrior Resiliency Program at the Brooke Army Medical Center at Fort Sam Houston. The Department stated that the removal was based on her disregard of directives. The Merit Systems Protection Board dismissed part of Dr. Davis's subsequent appeal of her removal, finding a lack of Board jurisdiction because she was not an "employee" under the pertinent statutory provision. The Board also found a regulatory-appeal provision inapplicable, finding that she was not removed based on pre-appointment conduct. And the Board rejected her claim that her removal was an act of reprisal for protected whistleblowing, finding that the Department had proven that it would have removed her even if the asserted whistleblowing had not occurred. We affirm.

I

From January 11, 2010, until September 24, 2010, Dr. Davis worked as a Clinical Psychologist for the Brooke Army Medical Center's Warrior Resiliency Program at Fort Sam Houston. During that period, she was a contractor hired by Humana/Veritas Healthcare, which, operating under a contract with the federal government, was providing the relevant services at the Center. On September 27, 2010, pursuant to a Standard Form 50 (SF-50), Dr. Davis was formally appointed to a federal-government position, a General Schedule (GS) position, as a psychologist at the Center. The appointment was subject to a one-year probationary period. *See Davis v. Dep't of the Army*, Nos. DA-1221-12-0640-W-6, PH-315H-12-0551-I-3, 2017 WL 67422, ¶ 2 (M.S.P.B. Jan. 6, 2017); Appx291.[1]

---

[1]    "Appx" refers to the materials attached to Dr. Davis's petition to this court. In responding to the petition,

During the months she was with Humana/Veritas, Dr. Davis had charged that she was subjected to sexual harassment and related retaliation. The Department conducted an investigation under Army Regulation 15-6 (AR 15-6) between September 7, 2010, and October 19, 2010, resulting in a report rejecting the charge issued on November 16, 2010—by which time she had entered the federal service. SAppx368–76. When Dr. Davis thereafter made further related charges regarding a hostile work environment and reprisal, the Department conducted a second AR 15-6 investigation, which started on February 22, 2011, and ended with a report issued on March 9, 2011. Appx190–93. In that investigation, the Department received criticism of Dr. Davis's conduct toward some colleagues.

In April 2011, Dr. Davis was directed, on three occasions, to meet with a ranking officer to discuss the second AR 15-6 investigation and her request for a transfer. Dr. Davis refused to meet. On May 5, 2011, well before one year had elapsed since September 27, 2010, the Department notified Dr. Davis that her employment was terminated effective May 11, 2011.

Dr. Davis sought relief from the Board on September 12, 2012. She complained, among other things, that her removal was a reprisal for certain whistleblowing disclosures—allegations of misconduct within the Department that she made in October 2010, February 2011, and April 2011. After hearing evidence, the Board administrative judge issued an Initial Decision on March 22, 2016. Initial Decision, *Davis v. Dep't of the Army*, Nos. DA-1221-

---

the Department assigned consecutive page numbers to Dr. Davis's materials, treated as a single document. We follow that numbering. "SAppx" refers to the Department's own attachments, a "supplemental" appendix.

12-0640-W-6, PH-315H-12-0551-I-3 (M.S.P.B. Mar. 22, 2016) (*Initial Decision*).

The administrative judge determined that the Board lacked jurisdiction to review the removal under 5 U.S.C. §§ 7511–7513 because Dr. Davis was not an "employee" under 5 U.S.C § 7511. The reason, the administrative judge concluded, is that she was still within her probationary period and she did not have one year of continuous service as defined in 5 U.S.C. § 7511(a)(1)(A). As to the one-year issue, the administrative judge found that Dr. Davis's eight months of work for Humana/Veritas did not count because that work was not qualifying federal-government employment. *Initial Decision* at 3–5.

The administrative judge next rejected Dr. Davis's claim of a regulatory violation. Under 5 C.F.R. § 315.805, a probationary employee has certain procedural rights when an agency proposes to terminate employment "based in whole or in part on conditions arising before his appointment." But the termination here, the administrative judge concluded, was based squarely on Dr. Davis's refusal to follow directives *after* the September 27, 2010 appointment, not on conduct occurring before that appointment. *Initial Decision* at 5–8.

Finally, the administrative judge determined that Dr. Davis was not entitled to relief based on her claim that she was the subject of whistleblowing reprisal in violation of 5 U.S.C. § 2302(b)(8)-(9). The administrative judge first found that Dr. Davis had made two protected disclosures (October 2010 and February 2011) that a reasonable person could conclude contributed to the Department's alteration of her duties and termination of her employment. *Initial Decision* at 9–24. But the administrative judge then found that the Department provided clear and convincing evidence that it would have taken the same actions against Dr. Davis without her protected disclosures. *Id.* at 24–37.

The Board subsequently rejected Dr. Davis's challenges to the Initial Decision. *Davis*, 2017 WL 67422 at ¶¶ 1-33. Dr. Davis timely sought review in this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II

Under 5 U.S.C. § 7703(c), we must affirm the Board's decision unless we determine that it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." We review the Board's ruling on its jurisdiction de novo. *Bledsoe v. Merit Sys. Prot. Bd.*, 659 F.3d 1097, 1101 (Fed. Cir. 2011). We review factual findings, including those concerning protected disclosures, for substantial evidence. *See, e.g., Miller v. Dep't of Justice*, 842 F.3d 1252, 1257-58 (Fed. Cir. 2016). We review the Board's procedural and evidentiary decisions for abuse of discretion. *Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 173 (Fed. Cir. 1986).

## A

We see no reversible error in the Board's determination that it lacked jurisdiction over Dr. Davis's appeal under 5 U.S.C. §§ 7511–7513. That jurisdiction depended on whether Dr. Davis was an "employee" under 5 U.S.C § 7511(a)(1)(A), which, as relevant here, required her to be, at the time of removal in May 2011, "an individual in the competitive service—(i) who is not serving a probationary or trial period under an initial appointment; or (ii) . . . who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less." Dr. Davis was a probationary employee in May 2011 and so did not come within (i). But she contended that she came within (ii): she argued that she had more than one year of the required continuous service as of May 2011 because she was entitled to add to the 7.5 months of GS service since September 27, 2010, to

the 8.5 months she worked for Humana/Veritas from January 11, 2010, to September 24, 2010. The Board properly rejected that contention.

There was substantial evidence to support the findings that Dr. Davis was a contract worker for Humana/Veritas, and not in the federal civil service, before September 27, 2010. The evidence includes the September 2010 SF-50, which lists no prior federal service; the absence of an SF-50 covering the Humana/Veritas work; and correspondence referring to Dr. Davis as an employee of Humana/Veritas. The "service" that counts toward completion of the one-year probationary period is only "[p]rior Federal civilian service." 5 C.F.R. § 315.802(b). In *Johnson v. Merit Sys. Prot. Bd.*, 495 F. App'x 68, 71 (Fed. Cir. 2012), the petitioner sought to satisfy § 7511(a)(1)(A) based on his work in the same capacity as a contractor with a private entity before he was employed by the Army. We held that such private work did not count. The same result is required here.

B

We also find no reversible error in the Board's rejection of Dr. Davis's contention that she was entitled to the protections available even to probationary employees like her when termination is for pre-appointment reasons. Under 5 C.F.R. § 315.805, a probationary employee who is terminated at least in part for pre-appointment reasons is entitled to certain rights including: (1) notice of the proposed action, (2) a reasonable time to file a written answer to the proposed action, and (3) notice of the agency's decision, including notice of the right to appeal. The Board has jurisdiction under 5 C.F.R. § 315.806(c) to hear appeals from alleged denials of the procedural rights of 5 C.F.R. § 315.805. *See LeMaster v. Dep't of Veterans Affairs*, 123 M.S.P.R. 453, 457 (2016); *Pope v. Dep't of the Navy*, 62 M.S.P.R. 476, 478 (1994). In the present matter, Dr. Davis, pointing to the May 2011 termination letter's

reference to the AR 15-6 investigations, argues in particular that the reference to the first AR 15-6 investigation shows that her termination was based in part on pre-appointment reasons because that investigation began before her appointment on September 27, 2010. We uphold the Board's rejection of this argument.

Substantial evidence supports the finding that the termination was based only on the April 2011 refusals to follow directives. The termination letter states the "termination is based on the following information," and what follows the colon is a four-item list that, after stating the trial-period character of the employment, lists only the three refusals to follow directives. Appx129–30. That language contrasts with the "I also considered the following" language that comes next, which is where the letter mentions a February 2011 incident and follow-up meeting (which were post-appointment) and the two AR 15-6 investigations. The difference in language supports the Board's finding that the latter served only as "background," *Davis*, 2017 WL 67422 at ¶ 18, and were not part of what the termination was "based on."

Further, what the termination letter says about the AR 15-6 investigations is simply that they include "findings" of "confrontational, aggressive, intimidating and hostile" conduct by Dr. Davis. Appx130. The "findings" language naturally refers to the *reports* of the two investigations, from November 2010 and March 2011. As the Board observed, however, the former does not make findings about this kind of conduct by Dr. Davis, *Davis*, 2017 WL 67422 at ¶ 19; *see* SAppx368–76, and the latter is reasonably read as not referring to this kind of conduct from the pre-appointment period—at all, or in any mean-

ingful way, *Davis*, 2017 WL 67422 at ¶ 19; *see* Appx190–93.[2]

For those reasons, we conclude that the Board reasonably found, on the evidence, that Dr. Davis's termination was not based on pre-appointment reasons, even in part. We therefore affirm the determination that 5 C.F.R. § 315.805 does not apply here.

C

We see no reversible error in the Board's rejection of Dr. Davis's whistleblowing claim, presented to the Board under 5 U.S.C. § 1221(e). To secure relief on that claim, which invokes the protections of 5 U.S.C. § 2302(b)(8) & (9), Dr. Davis had to show that (1) she made a protected disclosure and (2) the protected disclosure was a contributing factor in the agency's decision to take a personnel action. *See* 5 U.S.C. § 1221(e)(1)(A) & (B); *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). The Department could then defeat the claim if it could show, by clear and convincing evidence, that it would have taken the same action in the absence of the protected disclosures. *See* 5 U.S.C. § 1221(e)(2); *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). Here, the Board held that the Department had made that showing as to the two protected disclosures it found had contributed to the removal. We affirm the Board's ruling.

The Board examined (1) the strength of the Department's evidence in support of its action, (2) the existence and strength of any motivation to retaliate by the indi-

---

[2]    The administrative judge also found that the deciding official, when seeking drafting assistance in preparation for the termination, "mention[ed] only allegations of misconduct that occurred after [Dr. Davis's] appointment." *Initial Decision* at 8. Dr. Davis has not shown that finding to be unsupported by the evidence.

viduals involved in the decision, and (3) evidence that the Department takes similar actions against employees who are similarly situated but not whistleblowers. *Davis*, 2017 WL 67422 at ¶ 27 (citing *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). First, the Board found that the agency presented evidence, including testimony, showing that Dr. Davis "engaged in repeated insubordination, failing to follow orders from senior leadership to attend meetings called to discuss the results of the second AR 15-6 investigation." *Id.* at ¶ 28. Second, the Board found that the "administrative judge gave serious consideration to the appellant's overarching claim that the agency engaged in a pattern of retaliatory conduct against her" and agreed with the administrative judge's determination that there was "only weak evidence of any motive to retaliate against" Dr. Davis. *Id.* at ¶¶ 29-30. The Board deferred to the administrative judge's determination that Dr. Davis's supervisor credibly testified that he did not learn of her higher-level complaints until after he decided to terminate her appointment and that he would have terminated any other employee for disobeying a direct order to meet with their senior supervisory officials. *Id.* at ¶ 30. Third, the Board found that the strength of evidence relating to the first two *Carr* factors made up for any lack of evidence regarding the third *Carr* factor. *Id.* at ¶ 32. Dr. Davis argued that two other individuals, including her supervisor, suffered no adverse event for failing to attend the first AR 15-6 investigation meetings. *Id.* The administrative judge had distinguished the actions of those individuals because the record did not show that those individuals had been ordered to attend the meeting. *Id.* The Board agreed with the administrative judge's analysis. *Id.*

The evidence is sufficient to support the Board's finding. We have held that "*Carr* does not impose an affirmative burden" on the Government to produce evidence regarding each factor, and that the factors are "appropri-

ate and pertinent considerations" to be used in determining if the agency carries its burden of establishing by clear and convincing evidence that it would have taken the same action had the protected disclosures not occurred. *Whitmore*, 680 F.3d at 1374; *see Miller*, 842 F.3d at 1263 ("the Government need not introduce evidence for each *Carr* factor, or prove that each weighs in its favor to meet its burden"). In this case, even without evidence regarding the third *Carr* factor, the Board could reasonably find that the Department proved that it would have taken the same action in the absence of the protected disclosures.

D

Dr. Davis also contends that the administrative judge who presided over the prehearing conference and witness selection denied her due process by refusing to hear from certain proposed witnesses and denying her the ability to question her accusers. Dr. Davis also asserts that the administrative judge who presided over the hearing "repeatedly accepted the testimony of Agency officials at face value, with little to no corroborating evidence, and disregarded evidence (i.e., documents, emails, audio recordings and video recordings) that [she] supplied to refute the Agency's testimony as false." Pet. Br. at 25. The Board found no abuse of discretion by the administrative judges involved in the proceedings relating to the rulings on witnesses and evidence. *Davis*, 2017 WL 67422 at ¶¶ 22-23. In particular, the Board found that the administrative judge who presided over the prehearing conference and witness selection explained the reasons for declining to hear from each witness at issue and that Dr. Davis failed to show how the testimony of any of those witnesses would have affected the outcome. *Id.* at ¶ 22. Similarly, the Board found that Dr. Davis failed to show how the administrative judge erred in excluding a particular exhibit. *Id.* at ¶ 23.

The Board and its administrative judges have wide discretion regarding the admission of evidence and the conduct of proceedings. 5 C.F.R. § 1201.41(b); *Langer v. Dep't of Treasury*, 265 F.3d 1259, 1265-66 (Fed. Cir. 2001). Dr. Davis has not made a persuasive showing of any abuse of discretion, much less an abuse that caused prejudice to the outcome.

### III

For the foregoing reasons, we affirm the Board's judgment.

No costs.

**AFFIRMED**