NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CASSANDRA M. MENOKEN,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

_____

2022-2301

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-19-0297-I-1.

_____

Decided:  September 14, 2023

_____

CASSANDRA M. MENOKEN, Washington, DC, pro se.

STEPHEN FUNG, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent.  Also represented by ALLISON JANE BOYLE, KATHERINE MICHELLE SMITH.

_____

Before LOURIE, LINN, and STOLL, *Circuit Judges*.

PER CURIAM.

Cassandra M. Menoken appeals from a final order of the Merit Systems Protection Board that denied her petition for review of its initial decision that had dismissed her appeal for lack of jurisdiction. For the following reasons, we affirm.

BACKGROUND

Ms. Menoken was employed for many years as an Attorney-Advisor for the Equal Employment Opportunity Commission (EEOC). Sometime around 2014, the agency allowed Ms. Menoken to work remotely as a reasonable accommodation for a disability, namely stress and depression. Effective September 5, 2018, the agency revoked this accommodation after determining that it was no longer effective and offered her alternative accommodations that would provide for part-time remote work and regular breaks from work on days that she would report to work in person. Ms. Menoken did not report to work in person on September 5, 2018. Indeed, she did not report to work in person at any time in the following months. Instead, as she explained to her supervisor, Robbie Dix, she would be "taking extended leave while [she] consider[ed] [her] options for the long term." SAppx.[1] 18. Accordingly, she requested sick and annual leave covering the time between September 18, 2018, and October 2, 2018, "subject to further extension." *Id.*

On October 5, 2018, during her extended leave period, Ms. Menoken filed an appeal to the Board alleging that the agency had constructively suspended her by revoking her full-time telework status. *See Menoken v. Equal Emp. Opportunity Comm'n*, 2018 MSPB LEXIS 4512 (Nov. 27, 2018). The Board issued an initial decision dismissing her appeal for lack of jurisdiction. *Id.* at *12–13. In this

---

[1] References to "SAppx." refer to the supplemental appendix submitted by the respondent.

decision—which is not on appeal to us here—the Board explained that Ms. Menoken failed to make a nonfrivolous allegation of constructive suspension because such a claim requires a showing that the employee's absence was caused by wrongful agency action that deprived the employee of the choice to use leave, *id.* at \*11–12 (citing *Thomas v. Dep't of the Navy*, 123 M.S.P.R. 628, 633 (2016)), and Ms. Menoken's absence from work was voluntary. Ms. Menoken did not file any appeal from that decision, and it became the final decision of the Board.

On October 26, 2018, while Ms. Menoken was still on leave, the EEOC informed her that it would not allow her to continue using her paid leave unless it deemed the use justified. Ms. Menoken did not return to work, and from October 29, 2018, to November 16, 2018, she was placed on absence without leave (AWOL) status.

On November 23, 2018, Ms. Menoken submitted to the EEOC a letter from her psychologist recommending that the agency allow Ms. Menoken to use her remaining sick and annual leave until she could retire. On November 26, 2018, Ms. Menoken's supervisor notified her that she would be permitted to resume using her accrued sick and annual leave until her retirement was finalized. The EEOC further informed Ms. Menoken that she would be "required to exhaust available leave prior to receiving Leave Without Pay" (LWOP), and that "if she elected to use LWOP, it would first be converted to paid leave if she had such leave available." SAppx. 160 ¶ 4. In other words, after her paid leave was exhausted, her status would change to LWOP, where it would remain until her retirement. On November 29, 2018, Ms. Menoken submitted her retirement package, which indicated that she would retire effective January 31, 2019.

Ms. Menoken was scheduled to run out of paid leave on December 19, 2018. Contrary to the process that the agency had laid out—i.e., that all paid leave would be

exhausted first before switching to LWOP—Ms. Menoken requested to be on LWOP for the entirety of December 19, and instead use her final hours of paid leave on December 21. Having failed to realize that Ms. Menoken was scheduled to exhaust her available paid leave on December 19, her supervisor, Mr. Dix, initially approved this request. When he realized the error, Mr. Dix corrected Ms. Menoken's timesheet to reflect her leave status pursuant to the agency's prior instructions: she had used her final hours of paid leave on December 19 and was on LWOP status on December 21.

These precise dates are relevant because, on December 22, 2018, the federal government, including the EEOC, entered into a partial shutdown because of a lapse in appropriations. Ms. Menoken was furloughed for the length of the shutdown, which lasted until January 28, 2019. Most federal employees are entitled to backpay for the hours they would have worked during the shutdown. *See* OFF. PERSONNEL MGMT., FACT SHEET: PAY AND BENEFITS INFORMATION FOR EMPLOYEES AFFECTED BY THE LAPSE IN APPROPRIATIONS (2019). But employees who, on the final day before the shutdown, were scheduled to be on unpaid status, including LWOP or AWOL, were not entitled to receive backpay. *See id.* Accordingly, because Ms. Menoken was scheduled to be on LWOP status on December 21, Mr. Dix changed her status for the furlough period to LWOP, which precluded her from receiving backpay.

Ms. Menoken officially retired on January 31, 2019. **[JA 8, 10]** For the period between the end of the furlough and her retirement, she remained on LWOP status because, as had been true since September 5, 2018, she never returned to the workplace.

After her retirement, Ms. Menoken filed a second appeal to the Board, alleging that she was subjected to an enforced leave suspension and improperly denied backpay when the EEOC retroactively placed her on LWOP status

from December 24, 2018 (just after the start of the furlough period) through January 31, 2019 (the date of her retirement). The Board issued an initial decision finding that it lacked jurisdiction to consider Ms. Menoken's appeal because her absence from work was voluntary and thus outside the Board's jurisdiction. *See Menoken v. Equal Emp. Opportunity Comm'n*, 2019 MSPB LEXIS 1733 (May 23, 2019). Ms. Menoken filed a petition for review, and the Board issued a final order affirming the initial decision. *See Menoken v. Equal Emp. Opportunity Comm'n*, 2022 MSPB LEXIS 2910 (Aug. 5, 2022) (*Board Decision*).

Ms. Menoken appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703.

## DISCUSSION

On appeal, Ms. Menoken argues that the Board erred in determining it lacked jurisdiction and that the administrative judge (AJ) adjudicating her case made certain procedural errors in reaching its conclusion of no jurisdiction. *See* Appellant's Br. 12–14. We address these two arguments in turn.

First, we address Ms. Menoken's argument that the Board had jurisdiction over her case. Whether the Board has jurisdiction over an appeal is a question of law that we review de novo. *Herman v. Dep't of Justice*, 193 F.3d 1375, 1378 (Fed. Cir. 1999). The Board's jurisdiction is limited by statute. 5 U.S.C. § 7701(a); *see Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995) ("The [B]oard's jurisdiction is not plenary, but is limited to actions made appealable to it by law, rule or regulation."). Specifically, in cases involving adverse personnel actions, the Board's jurisdiction is limited to the types of appeals listed in 5 U.S.C. § 7512, which include, among other things, "a suspension for more than 14 days." § 7512(2). Relevant here, the Board lacks jurisdiction over appeals involving an employee's voluntary action, such as a voluntary absence from the workplace. *Garcia v. Dep't of Homeland Sec.*, 437 F.3d

1322, 1327–28, 1332 (Fed. Cir. 2006) (en banc); *Cruz v. Dep't of the Navy*, 934 F.2d 1240, 1244 (Fed. Cir. 1991).

The Board has explained that, in some circumstances, an agency's placement of an employee in a non-pay status without her consent can be an appealable suspension. *Martin v. U.S. Postal Serv.*, 123 M.S.P.R. 189, 193 (2016). In *Martin*, the employee signed a settlement with her employing agency in which she agreed to retire by a certain date. *Id.* at 191. The agreement was made contingent on its approval by the Office of Personnel Management—approval that never came. *Id.* at 191–92. The agency placed the employee back on paid duty status and retroactively placed her on LWOP status for the time that her settlement agreement had been pending. *Id.* The Board found that the agency's placement of the employee on retroactive LWOP status, without her consent, was an appealable suspension, i.e., was within the Board's jurisdiction. *Id.* at 193 (citing *Abbott v. U.S. Postal Serv.*, 121 M.S.P.R. 294, 298–99 (2014)).

In other circumstances, however, the agency's retroactive placement of an employee on non-pay status is not an appealable suspension. In *Perez v. Merit Systems Protection Board*, for example, an employee had self-entered his time as sick leave, but the agency switched him to AWOL status because he failed to provide satisfactory documentation for his leave. 931 F.2d 853, 855 (Fed. Cir. 1991). We held that being switched from sick leave status to AWOL status was not an appealable suspension, explaining that "where an employee has voluntarily absented himself from work, placement in a non-pay or AWOL status, even for longer than 14 days, is not a constructive suspension or other agency action appealable to the" Board. *Id.*

On appeal, Ms. Menoken asserts that "there is no distinction to be made between this case and *Martin*," because her timesheet was, like the employee's in *Martin*, retroactively changed to indicate that she was on LWOP status.

Appellant's Br. 16. But there is one key distinction between Ms. Menoken and the employee in *Martin*—Ms. Menoken's leave was voluntary.

As the Board explained in *Abbott*, when determining whether the Board has jurisdiction, "the only question is whether the employee's placement in a leave status was voluntary or involuntary; only the latter is appealable." 121 M.S.P.R. at 297. In *Martin*, for example, the employee remained on paid duty status until she had negotiated and signed her settlement agreement and only was placed on LWOP status retroactively by the agency. 123 M.S.P.R. at 191–92. Her placement in leave status was thus involuntary and appealable. *Id.* at 193. In contrast, Ms. Menoken voluntarily entered into a non-pay leave status months before the disputed time period of December 2018 to January 2019. Unlike the appellant in *Martin*, then, Ms. Menoken's placement on leave status was not involuntary—and thus her appeal is not within the Board's jurisdiction. *See Cruz*, 934 F.2d at 1244; 5 U.S.C. § 7512. In other words, as we said in *Perez*, "[i]t was [her] choice, not the agency's, to remain away from work." 931 F.2d at 855.

Ms. Menoken nonetheless suggests that her leave was involuntary because she elected leave with pay instead of LWOP status on December 21, 2022, and the agency should not have changed her timesheet to reflect that she had run out of paid leave on December 19, 2022. But "[i]t is well-settled that" how the agency chooses to manage its own internal leave policies, including when and how to authorize LWOP, "is within the agency's discretion." *Sambrano v. Dep't of Def.*, 116 M.S.P.R. 449, 450 (2011); *see also Campana v. Dep't of the Navy*, 873 F.2d 289, 291 (Fed. Cir. 1989) (authorization of LWOP is a matter of agency discretion). The Board in this case found that the agency had not abused its discretion in changing Ms. Menoken's timesheet to reflect her LWOP status for the time period in question, noting that her absence "imposed a burden on the agency" and there was no evidence suggesting "that the agency was

required to grant her intermittent LWOP." *Board Decision* at \*14.  We see no error in the Board's determination that the agency did not abuse its discretion in these circumstances and thus this argument does not establish Board jurisdiction.

Finally, we turn to Ms. Menoken's argument that the Board made certain procedural errors in making its determination that it lacked jurisdiction.  Procedural matters regarding discovery and evidentiary issues "fall within the sound discretion of the [B]oard and its officials." *Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988) (citing *Spezzaferro v. FAA*, 807 F.2d 169, 173 (Fed. Cir. 1986)).  We will not overturn the Board's determinations on such issues "unless an abuse of discretion is clear and is harmful." *Id.*  If an appellant alleges an abuse of discretion occurred, in order to prevail, she "must prove that the error caused substantial harm or prejudice to [her] rights which could have affected the outcome of the case." *Id.* at 1379 (citing *Cornelius v. Nutt*, 472 U.S. 648, 657–59 (1985)); *see also* 5 U.S.C. § 7701(c)(2)(A).  Ms. Menoken argues that the Board erred by failing to allow further discovery and not requiring the agency to submit its agency file.  Appellant's Br. 14.  Ms. Menoken does not identify any details regarding how the denial of additional discovery or agency file "caused substantial harm or prejudice to [her] rights," or how they "could have affected the outcome of the case." *Curtin*, 846 F.2d at 1378.  Ms. Menoken's limited argument on this issue does not explain how the Board abused its discretion.  On this record, we decline to conclude that the Board abused its discretion in determining that further discovery, including the agency's submission of its agency file, was not necessary to reach its determination.

CONCLUSION

We have considered Ms. Menoken's remaining arguments and find them unpersuasive.[2] For the above reasons, we affirm the Board's dismissal for lack of jurisdiction.

**AFFIRMED**

COSTS

No costs.

---

[2] We note that Ms. Menoken filed a memorandum in lieu of oral argument. Dkt. 38, 39 (corrected version). In this memorandum, Ms. Menoken repeats the arguments made in her briefing. *See* Dkt. 39 at 3. As these arguments are resolved by our opinion, we do not address this filing separately.